**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ADAM LAGUE, et al.,

        Plaintiffs,

    v.

DISTRICT OF COLUMBIA,

        Defendant.

Civil Action No. 14-1302
TSC/DAR

**MEMORANDUM OPINION**

Plaintiffs Adam and Maura LaGue commenced this action against the District of

Columbia on behalf of M.R-I., their minor child, pursuant to the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq. See* Complaint for Declaratory and

Injunctive Relief (Document No. 1).  In their complaint, Plaintiffs claim that (1) the District of

Columbia Public Schools ("DCPS") failed to provide M.R-I. with a free appropriate public

education ("FAPE") (Count I); (2) DCPS failed to develop an appropriate individualized

education program ("IEP") for M.R-I. (Count II), and (3) the Hearing Officer committed error

and violated Plaintiffs' due process rights by failing to apply correct legal standards, thus failing

to render a proper decision (Count III).  As relief, Plaintiffs ask that the decision of the Hearing

Officer be vacated; that they be reimbursed for tuition and other costs of M.R-I.'s  enrollment at

Kingsbury Day School ("Kingsbury") for the 2013-14 school year; that Defendant be ordered to

place and fund M.R-I. at Kingsbury, and to "declare it to be [M.R-I.'s] current educational

placement[,]" and that they be awarded their costs, including reasonable attorney's fees, of this action.  *Id*. at 10-11.

This action was referred to the undersigned United States Magistrate Judge for full case management.  Referral (Document No. 3); *see also* 08/20/2014 Minute Order.  Pending for consideration by the undersigned are Plaintiffs' Motion for Summary Judgment (Document No. 12) and Defendant's Cross Motion for Summary Judgment (Document No. 17).  Upon consideration of the motions; the memoranda in support thereof and opposition thereto (Document Nos. 18, 19, 20, 21, 23, 25); the administrative record ("AR") (Document Nos. 9, 10, 13-1), and the entire record herein, the undersigned will deny both motions without prejudice, and remand this matter to the Office of the State Superintendent for Education Student Hearing Office for further findings in accordance with the Memorandum Opinion.[1]


## BACKGROUND[2]

M.R-I., a resident of the District of Columbia who was seventeen years old at the time this action was commenced, has been determined by DCPS to be eligible for special education and related services as a student with a disability, Other Health Impairment ("OHI"), based upon a diagnosis Attention Deficient Hyperactivity Disorder.  *See* HOD at 6.  For four school years beginning with the 2009-10 school year, DCPS placed and funded M.R-I. at Kingsbury Day School ("Kingsbury") – a non-public, full-time special education school – and maintained

---

[1] The undersigned is mindful that Local Civil Rules 72.2, 72.3 and 73.1 generally preclude the determination by a magistrate judge of a motion for summary judgment absent the consent of the parties.  However, the undersigned finds that these rules do not preclude the denial of the pending motions without prejudice in the context of the remand for which this Memorandum Opinion and accompanying Order provide.  Such action is but an interim measure intended to ensure a more fulsome record for further consideration, and, thereafter, a report and recommendation.

[2] Unless otherwise indicated, the source of the salient facts summarized in this section is the Hearing Officer Determination ("HOD"), which appears in the Administrative Record ("AR") at pages 3-52.

that placement through the end of the 2012-13 school year. *See id*. at 8.  During a meeting on June 14, 2013, the IEP team, consisting of representatives of DCPS and the Plaintiffs, agreed that M.R-I. "was ready" to attend Columbia Heights Educational Center ("CHEC") -- a general education school -- for the 2013-14 school year with agreed upon "supports[.]"  An IEP for the 2013-14 school year was finalized at that meeting.[3]  *See id*. at 11-12.

During the first 30 days of the 2013-14 school year, M.R-I. "earned all As and Bs in his classes." *Id*. at 14.  During an IEP meeting conducted on September 30, 2013, concerns regarding "tracking" of assignments, the need for additional support in writing and editing and behavioral support services were discussed.  *Id*. at 15 -16.  As the school year progressed, M.R-I.'s parents expressed concern in communications directed to the Special Education ("SPED") Coordinator about M.R-I. "missing" assignments during October. *Id*. at 17-18.  On November 18, 2013, Plaintiff Adam LaGue emailed the SPED Coordinator regarding his desire to meet to discuss M.R-I's failure to complete homework assignments and attend classes, among other concerns.  *Id*. at 20.  On the same day, the SPED Coordinator offered to meet the parents at their home or at a coffee shop in the evening to discuss those concerns; however, the parents did not respond to the request and no meeting took place.  *Id*.

On December 20, 2013, Plaintiff Adam LaGue met with the SPED Coordinator at CHEC to discuss the need for attendance monitoring due to M.R-I. "skipping school and staying home playing video games." *Id*. at 21-22.  After this meeting, at some point between December 20 and 25, 2013, M.R.-I. apparently attempted suicide and was found hours later by Plaintiff Maura LaGue several miles away from home.   AR at 468-70; *see also* HOD at 24.

---

[3] While M.R-I.'s Plaintiff Maura LaGue expressed concern that M.R-I. would need a specialized program and access to advanced coursework, all agreed that M.R-I. would benefit from a general education setting.  AR at 104, 440-46.

On January 9, 2014, after the holiday break, Nickaya Foster, the DCPS Case Manager assigned to M.R-I., reached out to the IEP team "to schedule an IEP meeting to address [M.R-I.'s] progress, parent concerns, and location of services."  AR at 239; *see also* HOD at 25.  The meeting was scheduled for January 16, 2014, and Plaintiff Adam LaGue responded that both he and Plaintiff Maura LaGue would attend.  AR at 239, 243.  However, on January 15, 2014, Plaintiffs, through counsel, notified DCPS by letter that M.R-I. would return to Kingsbury, effective January 29, 2014, due to M.R-I's "failure to make progress at CHEC and need for significantly more services and supports than he is currently receiving." *Id*. at 245-246; *see also* HOD at 27.  Plaintiffs' counsel advised that the parents would seek public funding for M.R-I.'s attendance at Kingsbury.  *Id*.  Plaintiff's counsel also requested cancellation of the January 16, 2014 meeting, which he characterized as one "to discuss [the Student's] recent absences." AR at 246; *see also* HOD at 27.  On the same day, a case manager offered to reschedule the IEP meeting, inviting the parties to "let us know what date and time you are available to meet."  AR at 248; *see* HOD at 28.

On January 16, DCPS responded to Plaintiffs' notification letter, and in it, maintained that M.R-I. had received all of the supports for which the IEP provided, with the exception of occupational therapy, the subject of a prior authorization for services other than by DCPS.  AR at 251; *see* HOD at 26.

On January 30, 2014, counsel advised that M.R-I. returned to Kingsbury on that day.  AR at 250.  In the same communication, counsel stated that "the parents . . . are available and willing to attend an IEP meeting, if DCPS wishes to convene one." AR at 250, 251; *see also* HOD at 30.  Later on the same day, the SPED Coordinator replied: "At this time [CHEC] will not be convening an IEP meeting for your client." AR at 259; *see also* HOD at 31.

Plaintiffs filed a due process complaint on February 22, 2014, challenging the decision

not to fund M.R-I.'s placement at Kingsbury and alleging a failure to provide a FAPE.  AR at

263-69.  The due process hearing was conducted on April 21, 2014.  The following issues were

presented for determination:

> (a) Since the beginning of School Year ("SY") 2013-2014, has
> Respondent denied the Student a Free Appropriate Public
> Education ("FAPE") by failing to propose an appropriate
> Individualized Education Program ("IEP") to meet his needs
> because he requires a full-time special education setting?
>
> (b) Since the beginning of SY 2013-2014, has Respondent denied
> the Student a FAPE by failing to implement his IEP fully by
> failing to provide all of the Occupational Therapy ("OT") and
> behavioral support services specified in the IEP?
>
> (c) On or about January 30, [2]014, did Respondent deny the
> Student a FAPE and/or violate 34 C.F.R. §300.324(b) by
> refusing to convene a meeting of the Student's IEP Team?
>
> (d) Is Kingsbury Day School ("KDS") a proper placement for the
> Student?

AR at 312, 416 -715; *see also* HOD at 6-7.

In a written decision issued on May 2, 2014, the Hearing Officer dismissed the

Plaintiffs' complaint in its entirety with prejudice, concluding that Plaintiffs failed to prove that

Defendant denied a FAPE to M.R-I.  HOD at 52.  More specifically, the Hearing Officer found

that DCPS "did not deny the Student a FAPE by failing to propose an appropriate IEP to meet

[the Student's] needs including a full-time educational setting."  *Id.*  The Hearing Officer found

that DCPS had "violated 34 C.F.R. §300.324(b) by refusing to convene a meeting of the

Student's IEP team" on or about January 30, 2014; however, he concluded that this refusal was

a procedural violation, rather than a denial of FAPE, "because Petitioners already decided that

they would not accept any placement or [location of services] for the Student other than

[Kingsbury]."  HOD at 51; *see also id*. at 44 (commenting that the parents "had expressed their

intent to maintain the Student's private school enrollment whether or not [DCPS] revised the

Student's IEP and placement.")[4]


**THE PARTIES' CONTENTIONS**

Of the four issues presented for determination by the Hearing Officer, two emerge for

immediate consideration by this Court: (1) whether, on or about January 30, 2014, Defendant

denied M.R-I. a FAPE, violated 34 C.F.R. § 300.324(b), or both, by refusing to convene a

meeting of M.R-I.'s IEP team, and (2) whether Kingsbury – a non-public, full-time special

education day school – was, at the time of the due process hearing, "a proper placement" for

M.R-I.  *See* Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs'

Memorandum") at 17;-38; Memorandum of Points and Authorities in Support of Defendant's

Cross Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary

Judgment ("Defendant's Memorandum") at 26-34; Plaintiffs' Reply and Opposition to

Defendant's Cross Motion for Summary Judgment at 2-10; Defendant's Reply to Plaintiffs'

Opposition to Defendant's Cross Motion for Summary Judgment at 2-5; Plaintiffs' Additional

Briefing at 1-4; Defendant's Supplemental Memorandum at 1-5.  With regard to the first of the

two issues, Plaintiffs submit that the Hearing Officer erred in finding that Defendant's refusal to

convene an IEP meeting on or about January 30, 2014 "was a procedural violation that must be

regarded as harmless[,]" *see* HOD at 45, and not a denial of FAPE; Defendant submits that the

Hearing Officer correctly determined that Defendant's refusal to convene the meeting was but a

procedural error.  With regard to the second of the two issues, Plaintiffs submit that M.R-I.'s

---

[4] The Hearing Officer's additional findings, *see, e.g*., HOD at 36-52, are not summarized herein, as there is little
nexus between those additional findings and the issues discussed herein.

parents are entitled to reimbursement of the tuition and other costs they incurred in enrolling

M.R-I. at Kingsbury for the 2013-14 school year; Defendant submits that Plaintiffs are not

entitled to tuition reimbursement.[5]

**STATUTORY FRAMEWORK**

A primary goal of IDEA is "to ensure that all children with disabilities have

available to them a free appropriate public education that emphasizes special education and

related services designed to meet their unique needs and prepare them for further education,

employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A); *see also Boose v. District*

*of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015) ("The Individuals with Disabilities

Education Act aims to ensure that every child has a meaningful opportunity to benefit from

public education.").  Generally, states, as a prerequisite to eligibility for a share of federal

appropriations, must have in effect policies and procedures "to ensure . . . [that] [a] free

appropriate public education is available to all children with disabilities residing in the State

between the ages of 3 and 21, inclusive, including children with disabilities who have been

suspended or expelled from school."  § 1412(a)(1)(A).

Enrollment in a public school is not a prerequisite to an offer of FAPE to an eligible

child who resides in the school district.  This Court, on multiple occasions, has held that a local

education agency ("LEA") "has a continuing responsibility to offer a FAPE to a student with

---

[5] Plaintiff also suggest that "DCPS should . . . be ordered to *prospectively* place the student at Kingsbury Day School[.]"  Plaintiffs' Memorandum at 38 (emphasis supplied).  As no issue concerning prospective placement was considered by the Hearing Officer, *see* HOD at 6-7, the undersigned cannot consider that issue in the context of this civil action. *See, e.g.*, *Joaquin v. Friendship Pub. Charter Sch.*, No. 14-01119, 2015 WL 5175885, at *5 (D.D.C. Sept. 3, 2015) ("[A]bsent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the [IDEA] before seeking judicial review under the Act.") (quoting *Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1989) (citation omitted); *Pinto v. District of Columbia,* 69 F. Supp. 3d 275, 284 (D.D.C. 2014) ("A district court has no subject matter jurisdiction with respect to a claim that has not first been pursued though administrative proceedings.") (citations omitted).

disabilities within its district *regardless of whether that student is currently enrolled in a private school.*" *Oliver v. District of Columbia,* No. 13-00215, 2014 WL 686860, at * 4 (D.D.C. Feb. 21, 2014) (emphasis supplied) (citing *District of Columbia v. Wolfire*, 10 F. Supp. 3d 89, 94-95 (D.D.C. 2014); *see also District of Columbia v. Vinyard*, 971 F. Supp. 2d 103, 111 (D.D.C. 2013), *appeal dismissed,* No. 13-7167, 2013 WL 6818236, * at 1 (D.C. Cir. Dec. 26, 2013). Even in the context of a student enrolled by the student's parents in a private school outside the District of Columbia, this Court has held that "[j]ust because [the state in which the private school is located] may have . . . responsibilities [in accordance with IDEA] of its own and just because [the student] is currently enrolled in school in [the state in which the private school is located] does not relieve DCPS from having to fulfill its own responsibilities as the LEA of residence to evaluate the student and make FAPE available." *Oliver*, 2014 WL 686860, at *4 (citations omitted).  Thus, "regardless of [the] enrollment status [of a child with a disability], DCPS is required to . . . make a FAPE available[.]"  *D.S. v. District of Columbia*, 699 F. Supp. 2d. 229, 235 (D.D.C. 2010).

        The IEP "is the 'primary vehicle' for implementing the IDEA."  *Joaquin*, 2015 WL 5175885, at *1 (quoting *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006) (citation omitted).  An IEP is a written document which includes a description of "the impact of [a] child's disabilities, annual 'academic and functional' goals for the child, and the forms of individualized education and support that will be provided to the child in view of the child's disabilities and in order to aid the child's developmental academic progress." *D.S.*, 699 F. Supp. 2d at 233-34 (citing 20 U.S.C. § 1414 (d)(1)(A)).  The IEP "should be reasonably calculated  to enable the child to achieve passing marks and advance from grade to grade."

*Wolfire*, 10 F. Supp. 3d at 92 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. District,*

*Westchester Cnty. v. Rowley*, 458 U.S. 176, 204 (1982)) (internal quotation marks omitted).

More broadly, "an IEP is generally 'proper under the Act' if reasonably calculated to

enable the child to receive educational benefits.' " *Leggett v. District of Columbia*, 793 F.3d 59,

70 (D.C. Cir 2015) (quoting *Rowley*, 458 U.S. at 207).  "Because the IEP must be "tailored to

the unique needs" of each child . . . it must be regularly revised in response to new information

regarding the child's performance, behavior, and disabilities."  *Id.* at 234 (*Rowley*, 458 U.S. at

203); 20 U.S.C. §§ 1414(b)-(c)); *see also* 34 C.F.R. § 300.324(b)(1) ("Each public agency must

ensure that . . . the IEP Team reviews the child's IEP periodically, but not less than annually, to

determine whether the annual goals for the child are being achieved; and [r]evises the IEP, as

appropriate," to address among other matters, progress toward annual goals,  appropriate

curriculum, current observations, and anticipated needs.)  The school district must "generate

that new information as needed, through assessments and observations of the child." *Id.*  (citing

20 U.S.C. §§ 1414(c) (1)-(2)).

It is settled that IDEA's "broad remedial reach" encompasses "requir[ing] an LEA to

provide tuition reimbursement as compensation when a parent enrolls a disabled child in a

private school due to the LEA's deficiencies in providing a FAPE."  *Pinto*, 69 F. Supp. 3d at

284 (quoting *L.R.L. ex rel. Lomax v. District of Columbia,* 896 F.Supp.2d 69, 76 (D.D.C.

2012)) (citation omitted); *see also Oliver,* 2014 WL 686860, at *5 ("[T]he remedial authority

for which the Act provides 'includes tuition reimbursement for parents who unilaterally place

their child in private school [.]") (citing 20 U.S.C. § 1412(a)(10)(C)(ii)); *see generally*

*Vinyard,* 971 F. Supp. 2d at 115 ("Tuition reimbursement for private school tuition when the

school district denied a child a FAPE was first recognized by the Supreme Court as part of the

courts' broad authority to 'grant such relief as the court determines [is] appropriate.' ")

(quoting *Sch. Comm. of Town of Burlington, Massachusetts v. Dep't of Educ. of

Massachusetts,* 471 U.S. 359, 368, (1985)) (citation omitted).

Parents who enroll their child in a private school without the consent of school officials

will be entitled to reimbursement under the Act "only if 'the court or hearing officer finds that

the agency had not made FAPE available to the child in a timely manner prior to that enrollment

and that the private placement is appropriate.' " *Pinto*, 69 F. Supp. 3d at 284-85 (citations

omitted); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii) (stating that reimbursement may be

appropriate if "the agency had not made a free appropriate public education available to the

child in a timely manner prior to [the private-school] enrollment").  "Put another way, '[t]he

reviewing court may grant tuition reimbursement if: (1) the public placement violated the IDEA

and (2) the private school placement was proper under the Act.' " *Jalloh v. District of

Columbia,* 968 F. Supp. 2d 203, 210 (D.D.C. 2013) (citations and internal quotation marks

omitted); *see also Oliver,* 2014 WL 686860, at *5 ("[W]hen a public school system has

defaulted on its obligations under the Act, a private school placement is 'proper under the Act'

if the education provided by the private school is 'reasonably calculated to enable the child to

receive educational benefits [ ]'— the same standard by which the appropriateness of a public

school's IEP is assessed.") (citation omitted).

A parent, or adult student, may file an administrative complaint and have an

opportunity  for an impartial due process hearing if he or she objects to "the identification,

evaluation, or  educational placement of the child, or the provision of a free appropriate public

education to such  child."  20 U.S.C. § 1415(b)(6), (f)(1).  A party to the administrative

proceeding may challenge  the administrative decision "in any State court of competent

jurisdiction or in a district court of the United States . . . ."   § 1415(i)(2)(A).


## APPLICABLE STANDARD OF REVIEW

The applicable standard of review is well-settled: "In evaluating a hearing officer's

decision in an IDEA case such as this one, a court reviews the administrative record, may hear

additional evidence, and bases its decision on the preponderance of the evidence, granting such

relief as deemed appropriate."  *Pinto*, 69 F. Supp. 3d at 283 (quoting *Patterson v. District of

Columbia*, 965 F. Supp. 2d 126, 131 (D.D.C.  2013) (citing 20 U.S.C. § 1415(i)(2)(C))).

Where no additional evidence is considered by the court, "the motion for summary judgment is

simply the procedural vehicle for asking the judge to decide the case on the basis of the

administrative record."  *Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 30 (D.D.C. 2012);

*see also Smith*, 2014 WL 1425737, at *5 (citing *G.G. ex rel. Gersten v. District of  Columbia*,

924 F. Supp. 2d 273, 277-78 (D.D.C.  2013)) ("Where no additional evidence is before the

court, 'rather than applying the typical  standard applicable to a summary judgment motion . . .

the court in an IDEA case conducts a  summary adjudication.'"); *K.S. v. District of Columbia*,

962 F. Supp.  2d 216, 223 (D.D.C. 2013) ("Although styled Motions for Summary Judgment,

the pleadings in this case more accurately seek the Court's review of an administrative

decision.").

The party challenging the administrative decision "has the burden of proving

deficiencies in the administrative decision by a preponderance of the evidence."  *Kelsey v.

District of Columbia*, No. 13-1956, 2015 WL 1423620, at *3 (D.D.C. March 30, 2015).  The

court must make an independent determination, but "should give 'due weight' to the decision

of the hearing officer and should afford some deference to the expertise of the hearing officer

and the school officials." *D.K. v. District of Columbia*, 983 F. Supp. 2d 138, 144 (D.D.C.

2013) (citations omitted); *see also K.S.*, 962 F. Supp. 2d at 223 ("The preponderance-of-the-

evidence standard of review 'does not authorize unfettered *de novo* review.'").   "[A] hearing

decision without reasoned and specific findings deserves little deference," but a "court

upsetting the [hearing] officer's decision must at least explain its basis for doing so."   *Reid ex*

*rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (citations omitted)

(internal quotation marks omitted).

        A district court has discretion to remand an action brought pursuant to IDEA to the

hearing officer for further consideration of the evidence, and for further findings of fact and

conclusions of law, if such action is "the only vehicle by which review consistent with the

applicable statutory scheme can be accomplished[.]" *M.O. v. District of Columbia*, 20 F. Supp.

3d 31, 40 (D.D.C. 2013) (citing *Options Pub. Charter Sch. v. Howe ex rel. A.H.*, 512 F. Supp.

2d 55, 57-58 (D.D.C. 2007) (remanding IDEA action for further administrative proceedings

where the hearing officer made "no findings with respect to the basis upon which she credited

. . . testimony" and "elsewhere . . . relie[d] upon speculation")); *see also Joaquin*, 2015 WL

5175885, at *10 (remanding an IDEA action for further consideration by a hearing officer

where "the record contains insufficient evidence" concerning one of the issues presented, and

"the relief that [the parent] now request is itself uncertain.").   In a circumstance in which

remand is an appropriate exercise of the court's discretion, pending motions for summary

judgment may be denied without prejudice.  *E.g.*, *Banks ex rel. D.B. v. District of Columbia*,

720 F. Supp. 2d 83, 92 (D.D.C. 2010) (denying the plaintiff's motion for summary judgment

and the defendant's cross-motion for summary judgment without prejudice, and remanding the

case to the hearing officer, where "the administrative record is insufficient to determine whether D.B. was denied a free and appropriate public education when the School System did not provide all of the services in [the IEP]."); *see also Taylor v. District of Columbia*, 770 F. Supp. 2d 105, 111-12 (D.D.C. 2011) (denying pending motions for summary judgment without prejudice, and remanding the case to the hearing officer for further consideration of additional evidence).

**DISCUSSION**

      The undersigned finds that the determination of the Hearing Officer that Defendant's refusal to convene an IEP meeting on or about January 30, 2014 "was a procedural violation of IDEA that must be disregarded as harmless" can only be regarded a perversion of the settled law of this Circuit.  In so finding, the Hearing Officer quoted the shocking proposition that "[Defendant] had no obligation 'to go through the wasteful effort of attempting to conduct an IEP meeting and prepare an IEP for a student whose parent[s] [had] unilaterally withdrawn [the student] from the District and whose parent[s] [had] failed to respond to an overture from the District to convene an IEP meeting.'" HOD at 45.[6]  In support of this shocking proposition, the Hearing Officer cited only an unpublished decision rendered by a judge of the United States District Court for the District of Rhode Island.  *Id*.  Because the decision is unpublished, the undersigned has no means consistent with judicial review to assess the facts presented, and to consider the extent to which those facts are comparable to or distinguishable from those

---

[6] The phrase "failed to respond to an overture from the District to convene an IEP meeting" could be interpreted by a casual reader as an indication that M.R-I.'s parents failed to respond to an overture from DCPS to convene an IEP meeting.  However, the opposite is true in this case;  DCPS refused to convene an IEP meeting on January 30, 2014.

presented here; to review the authorities considered by the other court; or to determine whether

the decision is regarded as authoritative even in the District of Rhode Island.

More important, however, is the reality that the law in this Circuit, reaffirmed by the

Circuit twice within the last four months, is that "[i]f a school district fails . . . to offer the

student an appropriate IEP, and if that failure affects the child's education, then the district has

necessarily denied the student a free appropriate public education." *Boose*, 786 F.3d at 1056

(citations omitted); *see also Leggett*, 793 F.3d at 68 ("a delay does affect a student's substantive

rights, and is therefore 'actionable,' if the student's education *would* have been different but for

the procedural violation[]"; "only where [a violation of IDEA] was not obviously substantive

[]" has the Circuit required parents "to demonstrate . . . that [the student's] education was

affected[.]") (citations and internal quotation marks omitted).

The Hearing Officer also opined that M.R-I.'s parents, by enrolling M.R-I. at Kingsbury,

"effectively waived [Defendant's] offer of a FAPE." HOD at 45. This proposition, too, is one

which is entirely unexplained and, in addition, is unsupported by the law of this Circuit. While

a school district may, generally, be relieved of its obligation to *provide* a FAPE to a student who

has been withdrawn from a public school and enrolled in a non-public school by his or her

parents, such parental action does not relieve the school district of its obligation to *offer* a FAPE

to that student:

> [w]hen a student with disabilities is parentally placed in a private
> school, the LEA responsible for the district in which the student
> resides must continue to periodically evaluate the student's special
> education needs, either on its own initiative or at the request of the
> student's parents or teacher. . . . As a result, [DCPS] has a
> continuing responsibility to offer a FAPE to a student with
> disabilities that resides within its district regardless of whether that
> student is currently enrolled in a private school.

*Oliver,* 2014 WL 686860, at *4 *(*quoting *Wolfire*, 10 F. Supp. 3d at 92); *see also Vinyard*, 971

F. Supp. 2d at 111, *appeal dismissed,* 13-7167, 2013 WL 6818236 (D.C. Cir. Dec. 26, 2013).

The undersigned finds that the command to offer FAPE to M.R-I. was particularly compelling,

since Defendant, at the time it refused to proceed with the January 30, 2014 IEP meeting,

already had acknowledged the need to convene it, *see* AR at 239 (DCPS e-mail "reaching out to

schedule an IEP meeting to address [M.R-I.'s] progress, parent concerns, and location of

services[]"); indeed, the Hearing Officer, in his determination, found that "[DCPS] [was] on

notice by December 20, 2013, that the Student's needs were not being met by his September 30,

2013 IEP." HOD at 23.

　　　　Thus, M.R-I.'s return to Kingsbury on January 30, 2014 was of no moment: DCPS, on

notice, by the Hearing Officer's own estimation, as early as the preceding month, that M.R-I.'s

IEP was inadequate, was constrained to review M.R-I.'s current needs and, if appropriate, revise

the September 2013 IEP, as part of its obligation to *offer* a FAPE. Here, as in *Leggett*, "the

record . . . contains no evidence that [the parent's] decision to withdraw [the child] from [a

DCPS high school] prevented school officials from developing an IEP." *Leggett*, 793 F.3d at

68.[7]

　　　　The undersigned is mindful that district courts are advised to give deference to a Hearing

Officer's credibility findings. *E.g.*, *McAllister v. District of Columbia*, 45 F. Supp. 3d 72, 76

(D.D.C. 2014) (a hearing officer's findings "bases on credibility determinations of live witness

testimony" are given "particular deference" where the record is not supplemented) (citation

omitted); *see also Richardson v. District of Columbia*, 541 F. Supp. 2d 346, 356 (D.D.C. 2008)

---

[7] Defendant's argument that "in order to find a denial of FAPE, Plaintiffs must show that DCPS' failure to schedule a January 30, 2014, IEP meeting caused M.R-I. to lose an educational opportunity[,]" Defendant's Memorandum at 30, is inconsistent with the applicable authorities.

("judicial deference is given to the findings of Hearing Officers in the absence of facts

suggesting that such deference is unwarranted") (citation omitted).  However, in this instance,

the undersigned finds that there is no nexus between the credibility findings and the issue of

whether or not Defendant, by its refusal to convene the IEP meeting on or about January 30,

2014, deprived M.R-I. of a FAPE.  Put another way, no authority supports the proposition that a

student's parents or guardians, by any action or inaction, can relieve a school district of its

obligation to offer FAPE to a child with a disability residing in the district; indeed, such a result

would be "manifestly incompatible with IDEA's purpose of 'ensur[ing] that all children with

disabilities have available to them a free appropriate public education.'" *See Boose*, 786 F.3d at

1056 (citation omitted) (observing that if compensatory education were unavailable, "a child's

access to appropriate education could depend on his parents' ability to pull him out of the

deficient public program and from the cost of private instruction[.]").

        For all of the foregoing reasons, the undersigned will deny both pending motions

without prejudice, and remand this action to the Office of State Superintendent for Education

Student Hearing Office for further findings consistent with this Memorandum Opinion.  While

this Court certainly has discretion, for all of the reasons set forth herein, to grant Plaintiffs'

motion, the undersigned concludes that the Hearing Officer should first have an opportunity to

consider, consistent with this Memorandum Opinion, the issue of whether M.R-I's parents are

entitled to reimbursement of the tuition and other costs associated with their enrollment of M.R-

I. at Kingsbury during the 2013-14 school year.  *Reid,* 401 F.3d at 526 ("[I]n light of the

absence of pertinent findings in the administrative record and given that both parties previously

filed cross-motions for summary judgment rather than exercising their right to 'request'

consideration of additional evidence, the district court may determine that the 'appropriate'

relief is a remand to the hearing officer for further proceedings."); *see also N.W. v. District of Columbia*, No. 13-1801, 2015 WL 3507317, at *9 (D.D.C. June 4, 2015) ("A hearing officer is best positioned to gather evidence, make reasoned and specific findings, assess the adequacy of the . . . IEP, and if necessary, undertake the fact-specific exercise of discretion required to design appropriate relief.") (citing *Reid,* 401 F.3d at 524) (internal quotation marks omitted); *see Wilson v. District of Columbia,* 770 F. Supp. 2d 270, 277 (D.D.C. 2011) (remanding a case to conduct the "fact-specific exercise of discretion required by *Reid*" where the record contains insufficient findings) (citation omitted).[8]

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
DEBORAH A. ROBINSON
United States Magistrate Judge


September 16, 2015

---

[8] The need for further findings is particularly obvious where, as here, some of the Hearing Officer's pertinent findings are unexplained, *see, e.g.*, HOD at 51, and others are stated in a purely hypothetical form, *see id.* at 52.